## BOUGON v. VOLUNTEERS OF AMERICA et al.*
### No. 14575.

Court of Appeal of Louisiana. Orleans.
Jan. 2, 1934.

M'Caleb & M'Caleb and E. Howard M'Caleb, Jr., all of New Orleans, for appellant.

*Rehearing denied February 26, 1934.

Deutsch & Kerrigan & Burke, of New Orleans, for appellees.

WESTERFIELD, Judge.

Plaintiff was injured by contact with a motortruck owned by the Volunteers of America and driven by one of its employees. He brought this suit against the owner of the truck and against its liability insurance carrier, the National Casualty Company. The suit against the insurance company was dismissed upon an exception of no cause of action, whereupon the case as against the other defendant went to trial before a jury, with the result that a verdict was rendered and a judgment entered dismissing plaintiff's suit against this defendant also. Plaintiff has appealed.

Considering, first, the question of the liability of the defendant, the Volunteers of America, we find the facts to be that Paul Bougon, the plaintiff, a pedestrian, was injured on March 23, 1932, just after he had started to walk across North Rampart street at its intersection with Toulouse street, by being knocked down by a motortruck owned by the defendant, and, at the time of the accident, operated in its interest by one of its employees. During the course of the trial, evidence was submitted tending to show that the Volunteers of America was an institution entirely devoted to charitable purposes, and, there being no countervailing proof, the fact was established and conceded by opposing counsel. The learned judge, a quo, charged the jury to the effect that, under the laws of this state, charitable institutions are not liable for the torts of their servants and employees, and that, if they found from the evidence that defendant was a charitable institution, a verdict should be rendered in favor of defendant. It is evident, therefore, that the action of the jury and the approval of its verdict by the judge of the trial court rested upon the idea of exemption of charitable organizations from the effect of the torts of their employees.

The tort law of this state is stated with admirable succinctness in article 2315 of our Revised Civil Code as follows: "Every act whatever of man that causes damages to another, obliges him by whose fault it happened to repair it. * * * "

And in article 2320 of the Code the employer's liability for the conduct of his employees is thus stated: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

There are no exceptions mentioned in these articles, and we know of no law which has created any. In other states of the Union, where the common-law prevails, there has developed a jurisprudence based upon certain English cases, which have since been qualified and are not now followed in England, to the effect that charities are immune from liability upon the ground of public policy and other reasons, but particularly because of what is known as the "Trust Fund Doctrine." This doctrine, it is said, will not permit the diversion of funds held in trust for charitable uses, because it would result in the destruction of the charity, and, since it is beyond the power of the trustees to divert them directly, they cannot do so indirectly. 14 A. L. R. p. 572, note 1. The proponents of this doctrine fail to take into account the fact that a diversion of the trust funds may be as effectively accomplished by improvident contractual action as by negligent tortious conduct. The principle of respondeat superior announced in this state by article 2320, Rev. Civ. Code (supra), it is said, can find no application to charitable organizations because "such corporations do not come within the main reason for the rule of public policy which supports the doctrine of respondeat superior, because they derive no benefit from what their servants do in the sense of that personal and private gain, which is the real reason for the rule." 5 R. C. L. 376, and authorities cited under note 16.

Under the articles of our Civil Code and under the common law as well, an individual is bound to make compensation for his negligent acts causing damage to others, whether his motives be charitable or otherwise. He is also obliged to compensate the recipient of his charity for an injury received in its negligent performance. If he undertakes to act through others, his employees, the situation is not changed: "Qui facit per alium facit per se." Nor is the situation altered by the organization of a corporation for the carrying out of his purpose. 14 A. L. R. p. 573, verbo "Charities." However that may be, as we have said, in other jurisdictions, and, we now add, to some extent in this, the courts have held that a charitable institution is not liable for the torts of its servants. Noble v. Hahnemann Hospital of Rochester, 112 App. Div. 663, 98 N. Y. S. 605; Fire Ins. Patrol v. Boyd, 120 Pa. 624, 15 A. 553, 1 L. R. A. 417, 6 Am. St. Rep. 745; Jackson v. Atlanta Goodwill Industries, 46 Ga. App. 425, 167 S. E. 702; Webb v. Vought et al., 127 Kan. 799, 275 P. 170; Jordan v. Touro Infirmary (La. App., Orleans Cir.) 123 So. 726; Thibodaux v. Sisters of Charity, 11 La. App. (2d Cir.) 423, 123 So. 466; Foye v. St. Francis Sanitarium, 2 La. App. (2d Cir.) 305.

The Louisiana cases, beginning with Jordan v. Touro Infirmary, deal with the question of the right of a beneficiary of the charity to institute suit for damages based upon the torts of its servants. In the Jordan Case, the decision rests upon the trust fund doctrine of the common-law courts, and holds that a patient in a hospital cannot maintain an action for damages caused by the negli-

gence of its employees—in that case a trained nurse—even though the patient was what is known as a "pay patient."

In Foye v. St. Francis Sanitarium it was held that the only obligations that a charitable institution owes to the public, whether "pay" or "charity" patients, is to select with care the persons who act as nurses, a doctrine somewhat more extensive than that announced in the Jordan Case.

In Thibodaux v. Sisters of Charity the Court of Appeal of the Second Circuit, after citing the Jordan and Foye Cases, held that charities were not responsible to their beneficiaries, even though they were "pay" patients.

But there is no case in Louisiana which has extended the doctrine of the Jordan Case so as to grant immunity to charitable corporations for the torts of their employees causing injuries to third persons, and, while there are a number of other jurisdictions in which the "Trust Fund Doctrine" has been so extended, the clear weight of authority elsewhere is to the contrary. In 5 R. C. L. pp. 377–379, verbo "Charities," §§ 122 and 123, we read the following:

"It is true that many of the courts have declared generally that those administering a trust fund are not responsible for the torts of their agents, because damages for such torts cannot be paid from the trust fund. That statement was first made in an early case in the House of Lords of England, but was afterwards declared incorrect by the same tribunal. It has been constantly repeated in many jurisdictions and has been used as the basis of some discussions. But a rule that a charitable corporation is exempt from liability for the negligence of its servants, resulting in injuries to strangers, must rest upon the argument that the advantages reaped by the public from such trusts justify the exemption. If such an argument is sound, and its soundness is seriously doubted, it should be addressed to the legislative branch of government, for the courts have no power to create the exemption or declare an immunity.

"The proposition that trust funds cannot be used to compensate wrongs committed by an agent of the trustee is not a correct statement of the law, and the wisdom even of exempting a charitable institution from liability in tort to its beneficiaries is not entirely free from doubt. To extend this exemption so as to leave the institution free from responsibility to all persons is to place an institution above the law, which can be of advantage neither to the public nor, in any true sense, to the charity itself. Accordingly it is usually held that a charitable corporation is liable for the negligence of its servants where an injury is inflicted on a stranger. While the reason given for the exemption of a charitable corporation from liability for the negligence of its servants, that to allow a recovery would tend to thwart the purposes of the trust, may, with some degree of logic, be applicable where the injured person was at the time of the injury receiving the benefit of the charity, there is no ground upon which it may be held that the rights of those who are not beneficiaries of a trust can in any way be affected by the will of its founder. The rights of such persons are those created by general laws, and the duties of those administering the trust to respect those rights are also created by general laws. The doctrine that the will of an individual shall exempt either persons or property from the operation of general laws is inconsistent with the fundamental idea of government. It permits the will of the subject to nullify the will of the people. Nor is there any ground upon which a court can hold that effect can be given to that will when it relates to property devised or conveyed for the purpose of a charitable trust. The conclusion is that corporations administering a charitable trust, like all other corporations, are subject to the general laws of the land, and cannot, therefore, claim exemption from responsibility for the torts of their agents, unless that claim is based on a contract with the person injured by such a tort. The failure of a charitable association to discharge a non-delegable duty renders it liable to its servants and employees who are injured in consequence of such neglect."

It is interesting to note, though the matter is not pertinent here, that in at least some of those jurisdictions which apply the trust fund doctrine to strangers it has been held that, even where the charity is protected by an indemnity insurance policy, no recovery can be had, notwithstanding the fact that no diversion of trust funds would result. In other words, a third person cannot recover from a charitable organization for the effect of the negligence of its servants, because it would result in the diversion of trust funds, but, whether there be a diversion of trust funds or not, there can be no recovery for the same reason. Levy v. Superior Court, 74 Cal. App. 171, 239 P. 1100; Enman v. Trustees of Boston University, 270 Mass. 299, 170 N. E. 43.

Our conclusion on this point is that the plaintiff has a right of action against the defendant charitable organization.

On the merits, it appears that the plaintiff, who had just emerged from a soft drink establishment on the southwest corner of North Rampart and Toulouse streets with several companions, started to cross to the northeast corner of the intersection, and had just stepped from the curbing when he was run into by the side of a truck of the defendant, which had turned the corner of North Rampart street into Toulouse street. The charges of negligence against the driver of the truck, as set forth in the petition, are that he was not maintaining a proper lookout

and failed to give a warning of his approach; that he was driving at an excessive rate of speed and in violation of the traffic ordinance of the city of New Orleans, No. 13702, C. C. S. It is the contention of defendant that Bougon was responsible for the accident because he was attempting to cross Rampart street diagonally, without looking in the direction of traffic moving on that street. Neville v. Postal Telegraph Cable Co., 13 La. App. 76, 126 So. 720. But the plaintiff did look in the direction of North Rampart street traffic, and, whether his intention was to cross that street diagonally or not, he had only just stepped from the curb when the truck, which admittedly had turned the corner, struck him. He saw the truck and the driver of the truck saw him. The evidence in the record is overwhelmingly to the effect that the truck turned the corner at an excessive rate of speed, which is estimated to have been about thirty miles per hour, in violation of the city ordinance, article 6, section 5, paragraph A, which provides that: "A vehicle turning into another street to the right shall first give the proper hand signal indicating his intention and shall turn the corner as near the right hand curb as practicable, at a speed not to exceed ten miles per hour."

In our opinion, the accident was caused by the excessive speed and the failure to give proper warning of the intention to turn the corner, which is also established by the evidence.

Our conclusion on the merits is that plaintiff should recover.

■ On the question of plaintiff's right of action against National Casualty Company, defendant's insurance carrier, the case turns upon the interpretation of Act No. 55 of 1930, § 2, amending section 1 of Act No. 253 of 1918, in the following words:

"That, after the passage of this act, it shall be illegal for any company to issue any policy against liability unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and any judgment which may be rendered against the assured, for which the insurer is liable, which shall have become executory, shall be deemed prima facie evidence of the insolvency of the assured, and an action may thereafter be maintained within the terms and limits of the policy by the injured person or his or her heirs against the insurer company. Provided further that the injured person or his or her heirs, at their option, shall have a right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and the insurer company, jointly and in solido.

"Provided that nothing contained in this act shall be construed to affect the provisions of the policy contract if the same are not in violation of the laws of this State.

"It being the intent of this act that any action brought hereunder shall be subject to all of the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured; provided the term and conditions of such policy contract are not in violation of the laws of this State."

The contention of the defendant is that the act only gives the injured person a direct action against the insurer when there is no clause in the insurance contract forbidding such action, and that, in the insurance policy which had been issued by the National Casualty Company in this case, there is a clause forbidding any action against the insurance company by any person until "the amount of loss shall have been fixed either by a final judgment against the assured by the court of last resort, after trial of the issue, or by agreement between the parties with the written consent of the company." This construction of the act is said to be justified by the language italicized by counsel and as follows: "Subject to all the lawful conditions of the policy contract and the defenses which could be urged by the insurer to a direct action brought by the insured."

These words, it is argued, constitute a qualification of the right of action given to a third person under the act so as to limit to cases in which the policy does not forbid such actions. The Act No. 55 of 1930, the provisions of which we have been discussing, was, it is claimed, enacted by the Legislature in the interest of insurance companies, who are said to have been aggrieved by the ruling of this court in Edwards v. Fidelity & Casualty Company of New York, 11 La. App. 176, 123 So. 162, interpreting Act No. 253 of 1918, wherein we held that, under a provision of that act which required the insurance company to insert in all policies issued in this state a clause permitting the maintenance of an action against it by the injured person "within the terms and limits of the policy," a direct action could be maintained against an insurance company notwithstanding a provision in the policy to the effect that the assured was bound to give immediate notice of any accident covered by the policy and the failure of the company to receive any notice until eleven months after the accident occurred, on the ground that those provisions in the policy were not applicable to third persons.

Whatever reason there was for the amendment of Act No. 253 of 1918 by Act No. 55 of 1930, we are very loath to believe that it was accomplished, as counsel suggested, by

insurance companies doing business in this state, because our knowledge of the capacity and professional skill of counsel representing these corporations is such as to preclude the thought that so inartistic a statute could have originated in such capable source. In so far as the language of the statute purports to limit an action by a third person to such as might have been brought by the insured against the insurer, it is a manifest absurdity. The foundation of the action of the insured is in contract, to which the injured party is a stranger, except in so far as the statutory provisions may be incorporated in the policy. The basis of the action by the injured party is negligence, or tort; that of the insured a contract of indemnity.

The insurer in its contract of insurance undertakes to indemnify the insured against "loss from the liability imposed by law upon the assured for damages on account of bodily injuries including death resulting therefrom accidentally suffered or alleged to have been suffered within the policy period by any person or persons by reason of the ownership, maintenance or use (including loading or unloading) of any automobiles described in the schedule." It contains a number of other clauses qualifying the obligations of the insurer, as, for example, the provision with respect to immediate notice which we considered in Edwards v. Fidelity & Casualty Co. of N. Y., supra, and the provision requiring that the assured shall render all possible co-operation and assistance to the insurer in the conduct of legal proceedings growing out of an accident. Referring to this latter provision with respect to co-operation, it would be ridiculous to say that an injured person could only maintain an action against an insurer by co-operating with the insurer to defeat his own action, so that it is obvious that the statute does not mean to limit the action of the injured party to situations where the insured would have a right of action against the insurer. In our opinion, this particular section of the act intends to limit the action of the third person against the insurer to such cases as would involve a liability of the insured and within the coverage of the policy. This was the view we entertained with respect to the former act, No. 253 of 1918, considered in the Edwards Case, and we do not believe that Act No. 55 of 1930, amending the act of 1918, has made any change in this respect.

But there must have been some legislative purpose in amending section 1 of Act No. 253 of 1918 by Act No. 55 of 1930 (section 2), and we believe a comparison of the two acts will reveal it. The act of 1918, with the exception of the repealing clause and a declaration as to the date of its effective application, is in two sections. Section 1 declares that it shall be illegal for any company doing business in this state to issue a policy against liability "unless it contains a provision to the effect that the insolvency or bankruptcy of the assured shall not release the company from the payment of damages for injury sustained or loss occasioned during the life of the policy, and, in case of such insolvency or bankruptcy, an action may be maintained within the terms and limits of the policy by the injured person or his or her heirs, against the insurer company." Section 2 of the act denounces its violation as a misdemeanor punishable by fine of not less than $50 and not more than $500. So that this act declares that the bankruptcy of the assured shall not·release the company from liability and permits the injured person, in the event of such insolvency, to maintain a direct action against the insurance company. The amending act, Act No. 55 of 1930, goes very much further. It repeats what is said in the first section of the act of 1918, and then declares that the insolvency of the surety shall be prima facie established when a judgment against him shall become executory, a provision which is not found in the act of 1918 and an enlargement upon the right of the injured person to that extent. The amending act, however, goes much further and gives to the injured person a "right of direct action against the insurer company within the terms, and limits of the policy, in the parish where the accident or injury occurred, or in the parish where the assured has his domicile, and said action may be brought either against the insurer company alone or against both the assured and insurer company, jointly and in solido." Then follows the provision that nothing in the act shall be construed to affect the provisions of the policy if they are not in violation of the laws of the state and a declaration of the intent of the Legislature to subject actions brought under its authority to the lawful conditions of the policy contract, and then the confusing statement that defenses which could be urged by the insurer in an action by the insured may be urged against the injured person bringing the suit under the authority of this section, which we have already discussed. The Edwards Case was brought under the provisions of the act of 1918, which gave a direct action to the injured party only in the event of the insolvency of the insured, so that one of the questions in that case was how the insolvency of the insured should be made manifest, defendant contending that it must first be proven judicially. In expressing our disapproval of this contention, we pointed out that there are two kinds of insolvency recognized in our law, actual and declared, and that all that plaintiff need show was actual insolvency, which could be established by a return of "nulla bona" in execution of a judgment. To quote from the opinion: "We are convinced that what the statute intended and what the policy meant was that the injured party, as soon as he had the right to execute the judgment against the assured, and as soon as he was unsuccessful

in the exercise of that right, should have a cause of action against the insurer."

It will thus be seen that, whether intentional or otherwise, the act of 1930, far from destroying or qualifying the effect of the decision in the Edwards Case, enlarged upon it by making certain of the conclusion we had reached upon the subject of insolvency in giving it the status of a legislative enactment. Furthermore, the amending statute greatly increased the privilege of the injured person by conferring a right of direct action against the insurer without the necessity of establishing the bankruptcy of the insured and in advance of the securing of a judgment against it by joining the assured and the insurance company in the original action, or by suing the insured alone, or the insurer alone, and this the act declares may be done in the parish where the accident or injury occurred, or in the parish where the assured has his domicile.

Considering both acts together, the act of 1918 and the act of 1930, it seems to us too plain for argument that it represents a determination upon the part of the Legislature to extend the rights of an injured party as against the insurer. In the beginning, an action could only be maintained in the event of the insolvency of the insured. Later this right of action was facilitated by a definition of insolvency and a conditional right of action conferred unrelated to the insolvency of the insured and capable of being exercised initially as against the insurer alone, or in conjunction with the insured as a solidary obligation.

Just a word about the Edwards Case, which, we are informed, has met with considerable criticism, as distinguished an authority as the Supreme Court of California having declared that it is clearly against the great weight of authority. Hynding v. Home Acc. Ins. Co., 214 Cal. 743, 7 P.(2d) 999, 85 A. L. R. 13. We realize that the current of judicial authority is usually right, and therefore that we are probably wrong, but, if so, the mists of misunderstanding have not cleared, and we are still enveloped in the Plutonian darkness of error, for we arise from a reconsideration of that case with a new and more abiding faith in its correctness.

Much has been said during the oral argument of this case concerning the hardship to the insurer which the interpretation of the statute we have adopted would involve. If there be any injustice to the insurer as a result of this statute, the obvious relief is through legislative action. But, if we may be pardoned for expressing an opinion not necessary to the decision of the case, we cannot understand how any unusual burden could be placed upon the insurer by the act as we have interpreted it. In the first place, an insurance company sells insurance just as a merchant sells flour, or bacon, or eggs, and his business, like that of the merchant, is conducted for profit, and, like the merchant, his profit is based upon the cost of the commodity he sells. Therefore, if, in order to comply with the public policy of the state of Louisiana, the insurer's product is made more costly, the selling price or premium will be increased accordingly. If it be objected that the analogy is not appropriate because the merchant can estimate his cost with greater certainty because of the fact that the insurer's cost is determined by fortuitous events, such as the happening of an automobile accident, we reply that it is a matter of common knowledge that insurance companies, by tabulating their experience over a number of years, determine with an uncanny accuracy the risk involved in any particular hazard insured against. Take life insurance, for example, the most hazardous of all, because the only thing certain about life is its uncertainty, and yet there has been compiled a chart, or table known as the American Experience Table of Mortality, which enables the life insurance companies to estimate the cost of doing business with about the same precision as the flour merchant.

In conclusion we are of opinion that the judgment in favor of the Volunteers of America and dismissing plaintiff's suit was erroneous, and that the judgment maintaining the exception of no cause of action and dismissing plaintiff's suit against the National Casualty Company was also erroneous. With regard to the National Casualty Company, the case must be remanded since the exception was maintained in limine and it has not had its day in court.

Plaintiff's injuries were not serious. He suffered contusions and abrasions of his right side, face, and ear. His physician compelled him to remain in bed for two weeks because of his apprehension that pleurisy might develop, but his fears were not realized, due, possibly, to the care and attention given his patient. Plaintiff's expenses for doctor's bill, X-ray, drugs, loss of clothing, and eyeglasses ruined in the accident, etc., amounted to $244.50. We will allow an additional $500 for pain and suffering, making a total of $744.50.

For the reasons assigned, the judgment in favor of the Volunteers of America and against Paul Bougon is reversed, and it is now ordered that there be judgment in favor of Paul Bougon and against the Volunteers of America in the full sum of $744.50, with legal interest from judicial demand and all costs.

It is further ordered that the judgment maintaining the exception of no cause of action filed on behalf of the defendant National Casualty Company be reversed, and the case

as to this defendant remanded to the civil district court for further proceedings according to law and consistent with the views herein expressed.

Reversed in part; reversed and remanded in part.