**BLITZ v. MUNSON et al. ***
No. 14950.

Court of Appeal of Louisiana. Orleans.
March 18, 1935.

Eraste Vidrine, of New Orleans, for appellant.

Porteous, Johnson & Humphrey, of New Orleans, for appellees.

LECHE, Judge.

This suit results from a collision between two automobiles in the intersection of Burdette and Maple streets in the City of New Orleans, and from a judgment in favor of defendants plaintiff has appealed.

The accident happened in the afternoon of February 3, 1933, at about 3:30 o'clock p. m. Plaintiff's Ford truck operated by his agent, was proceeding up Maple street in the direction of Carrollton avenue; Maple street at that point being paved and carrying traffic in both directions. Defendant's automobile, driven by himself, was proceeding out Burdette street in the direction of South Claiborne avenue; Burdette being also paved and carrying traffic only in the direction in which defendant's automobile was proceeding. There were no eyewitnesses to the accident other than the driver of plaintiff's truck, the defendant Munson, and Mrs. Munson, who was an occupant of his car at the time. Plaintiff's agent Tatar, the driver of the Ford truck, testified that he had made a stop in the block of Maple street and then proceeded up that street; that when he reached the intersection of Burdette street he saw defendant's car a quarter of a block away and proceeded to cross the intersection, negotiating about three-quarters of the way when the truck was struck on the left rear wheel. He testified that he was driving between twelve and eighteen miles per hour at the time of the collision; that his car proceeded twenty-five to thirty-five feet into Maple street beyond the intersection, where it overturned on its right side knocking him unconscious.

Munson testified that he was driving twenty to twenty-five miles per hour; that he blew his horn before entering the intersection, but did not stop or slacken his speed until the moment of impact. He testified that he was not familiar with the traffic rules in force in the city of New Orleans at that time nor at the time of the trial. When asked if the truck was already crossing the intersection when he arrived there, he answered: "I think that. My opinion is—I'll change that. We both entered the intersection at the same time."

He further said that he was driving out Burdette street in a straight line and did not swerve or attempt to swerve his car until the moment of the impact, and when asked if he had swerved a little bit, even a foot or two, would he have missed the other car, he replied: "Probably so." He stated that upon reaching the intersection he looked to the right and to the left and saw the Ford truck coming from the right at a high rate of speed.

*Rehearing denied April 15, 1935.

Mrs. Munson also testified that defendant's car was going between twenty and twenty-five miles per hour. She says that she did not see the truck until they were nearly three-quarters of the distance across Maple street, and that the truck came very rapidly and tried to pass them by swerving to the right, and that after the impact plaintiff's agent applied the brakes and skidded about forty or fifty feet and then turned over. She said that the skid marks did not begin at the intersection, as testified to by her husband, but began at the point of impact.

Our appreciation of the testimony is that plaintiff's truck was proceeding up Maple street and reached the intersection of Burdette street at a speed between fifteen and eighteen miles per hour; that the driver looked to the left and saw defendant's car approaching some distance from the intersection and far enough to permit the safe passage of the truck provided defendant's automobile observed the traffic rules and slowed down in recognition of plaintiff's right of way. Defendant's automobile was going out Burdette street at a speed of twenty to twenty-five miles per hour. The driver looked right and saw plaintiff's truck approaching at, what he says, an excessive rate of speed; but, according to his own testimony, he disregarded this and without stopping or slackening his speed looked to the left and proceeded to cross the intersection. The physical facts are strongly in favor of plaintiff. There is no dispute that the left front portion of defendant's car struck the extreme left rear portion of plaintiff's truck, and had defendant's car slowed down ever so slightly, or simply swerved to the right one or two feet, the collision would not have occurred. According to Munson's own testimony he had the last clear chance to avoid the collision and failed to do so. He was approaching plaintiff's car from the left, which gave plaintiff the right of way under the city traffic ordinance, which was introduced and filed in evidence. In addition to this, plaintiff's truck had negotiated considerably more than half the intersection before being struck, as Munson testified that he was driving approximately in the center of Burdette street, which placed the left side of his car several feet to the left of the center line of Burdette street and, as this was the portion of his car which collided with the extreme rear of plaintiff's truck, the truck must have been well across the intersection. Although defendant's car struck the rear portion of plaintiff's truck, it proceeded at least ten feet before being brought to a stop in spite of the impact, which tends to show that it was proceeding at a fairly rapid rate of speed. Plaintiff's truck was knocked off balance to such an extent that the driver lost complete control, the truck turning over on its right side some distance into the roadway of Maple street. Plaintiff's driver, noticing defendant's automobile some distance from the intersection and not knowing that it was proceeding at any unusual rate of speed and knowing that he had the right of way, had the right to assume that defendant would not only recognize his right of way, but would do what the average reasonable man would do under the same or similar circumstances, namely, slow down enough to permit him to pass. On the other hand, defendant approached the intersection, and, as he says, looked to the right and saw plaintiff's truck proceeding at a rapid rate of speed. He then looked to the left and in the meantime proceeded into the intersection without slackening the speed of his automobile, and we are of the opinion that the collision was due solely and only to defendant's negligence.

The damage to plaintiff's truck amounted to the sum of $135. It was further proved that plaintiff was deprived of the use of his truck in his business and that he was compelled to rent a truck to replace same for a period of seventeen days at the price of $2.50 per day. We are of the opinion that this charge is reasonable and that plaintiff is entitled to recover this amount as an item of damage.

The defendant All State Insurance Company of Chicago resists on the ground that no recovery can be had against it because under the terms of its policy no recovery against the company shall be had, under coverages A and B, until the amount of the assured's obligation shall have been determined either (a) by judgment in a court proceeding against the assured, not paid or superseded (and until such judgment has become final and has remained unsatisfied for thirty days), or (b) by written agreement of the assured, the claimant, and the company; nor in either event unless suit is instituted within two years after the date of such judgment or written agreement. This question has been decided adversely to defendant by this court in the case of Bougon v. Volunteers of America, 151 So. 797.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that there be judgment herein in

favor of plaintiff, Rubin Blitz, and against defendants, Edward P. Munson and All State Insurance Company of Chicago, Ill., in solido, in the sum of $177.50, together with legal interest thereon from judicial demand until paid, and for all costs of this proceeding.

Reversed.