### TATAR v. MUNSON et al.
#### No. 16096.

Court of Appeal of Louisiana. Orleans.
May 27, 1935.

A. D. Danziger, of New Orleans, for appellant.

Porteous, Johnson & Humphrey and F. Carter Johnson, Jr., all of New Orleans, for appellees.

LECHE, Judge.

On February 3, 1933, about 3:30 o'clock p. m., an automobile collision occurred at the intersection of Burdette and Maple streets in the city of New Orleans. Mr. Edward P. Munson was driving his Ford V 8 sedan on Burdette street in the direction of South Claiborne avenue or away from the Mississippi river. The Ford model T truck, belonging to Mr. Rubin Blitz and driven by Thomas Tatar, was proceeding up Maple street in the direction of South Carrollton avenue and away from Broadway. As a result of the collision Rubin Blitz filed a suit in the First city court of New Orleans against Edward P. Munson and his insurance carrier, claiming the sum of $135, representing damages to his truck by reason of the collision and a smaller amount in addition thereto for the loss of use thereof. From an adverse judgment Blitz appealed to this court obtaining a reversal of the judgment below, all as more fully appears by reference to our opinion in the case of Blitz v. Munson, 159 So. 754, 755.

The present suit was filed by Thomas Tatar against Edward P. Munson and his insurer in the civil district court for the parish of Orleans for damages for personal injuries sustained by Tatar, coupled with sundry small claims for damages to clothing, loss of time, etc.

In the case of Blitz v. Munson, supra, we said:

"Our appreciation of the testimony is that plaintiff's truck was proceeding up Maple street and reached the intersection of Burdette street at a speed between fifteen and eighteen miles per hour; that the driver looked to the left and saw defendant's car approaching some distance from the intersection and far enough to permit the safe passage of the truck provided defendant's automobile observed the traffic rules and slowed down in recognition of plaintiff's right of way. Defendant's automobile was going out Burdette street at a speed of twenty to twenty-five miles per hour. The driver looked right and saw plaintiff's truck approaching at, what he says, an excessive rate of speed; but, according to his own testimony, he disregarded this and without stopping or slackening his speed looked to the left and proceeded to cross the intersection. The physical facts are strongly in favor of plaintiff. There is no dispute that the left front portion of defendant's car struck the extreme left rear portion of plaintiff's truck, and had defendant's car slowed down ever so slightly, or simply swerved to the right one or two feet, the collision would not have occurred. According to Munson's own testimony he had the last clear chance to avoid the collision and failed to do so. He was approaching plaintiff's car from the left, which gave plaintiff the right of way under the city traffic ordinance, which was introduced and filed in evidence. In addition to this, plaintiff's truck had negotiated considerably more than half the intersection before being struck, as Munson testified that he was driving approximately in the center of Burdette street, which placed the left side of his car several feet to the left of the center line of Burdette street and, as this was the portion of his car which collided with the extreme rear of plaintiff's truck, the truck must have been well across the intersection. Although defendant's car struck the rear portion of plaintiff's truck, it proceeded at least ten feet before being brought to a stop in spite of the impact, which tends to show that it was proceeding at a fairly rapid rate of speed. Plaintiff's truck was knocked off balance to such an extent that the driver lost complete control, the truck turning over on its right side some distance into the roadway of Maple street. Plaintiff's driver, noticing defendant's automobile some distance from the intersection and not knowing that it was proceeding at any unusual rate of speed and knowing that he had the right of way, had the right to assume that defendant would not only recognize his right of way, but would do what the average reasonable man would do under the same or similar circumstances, namely, slow down enough to permit him to pass. On the other hand, defendant approach-

ed the intersection, and, as he says, looked to the right and saw plaintiff's truck proceeding at a rapid rate of speed. He then looked to the left and in the meantime proceeded into the intersection without slackening the speed of his automobile, and we are of the opinion that the collision was due solely and only to defendant's negligence."

■ A careful consideration of the record now before us convinces us that our opinion and decree in the former case, rehearing in which was refused, was not erroneous. The testimony in this case is substantially the same. Mr. Munson was driving a new Ford V 8 sedan, being accompanied by Mrs. Munson, who occupied the front seat to the right of her husband, and his daughter, Miss Joan Elizabeth Munson, who occupied the rear seat alone. Mrs. Munson testified at length, but admitted on cross-examination that she did not know how far away the truck, driven by plaintiff, was when she first saw it. She testified as follows relative to the truck driven by plaintiff:

"Q. How far was he from the intersection? A. I do not know. It happened very quickly. The only thing I knew was when this truck swerved in front of us.

"Q. Was he fifty feet away when you first saw him? A. I can not say.

"Q. You do not know whether he was fifty feet away or one hundred feet away? A. No, sir.

"Q. Or fifty feet or twenty-five feet? A. I do not know. It happened suddenly."

It is not reasonable to suppose that this lady, driving with her husband and daughter, anticipated the collision and was in a position to describe the details, and she truthfully stated that she did not know how the collision occurred because "it happened suddenly." Her explanation was that the truck was going very fast and dashed in front of her automobile. She said that Mr. Munson was proceeding between twenty and twenty-five miles an hour and that he slowed up for the intersection.

Miss Joan Elizabeth Munson was riding on the back seat of her father's automobile and said that she did not see the truck until it was hit and that at the time of the impact her father's car was about in the middle of the intersection. She stated that she was not paying any attention until the collision actually occurred.

The plaintiff, Tatar, testified that he had stopped in the preceding block of Maple street to make a collection and was proceeding up Maple street at about eighteen miles an hour;

that upon reaching the intersection of Burdette and Maple he looked to the left and saw plaintiff's car approaching at such a distance as would give him ample opportunity to negotiate the intersection and that he proceeded to cross; that when he was nearly across the intersection defendant's car struck the left rear portion of the truck, causing it to swerve and turn over on the river side of Maple street approximately fifty feet from the intersection.

The defendant Munson testified that he was driving out Burdette street towards South Claiborne avenue at a speed of approximately twenty-five miles per hour and that upon approaching the intersection sounded his horn. He testified:

"Q. Did you retard or accelerate the speed of your car? A. I do not know whether I did or not."

He stated that as he reached the intersection he saw the truck to his right on Maple street at a distance of about forty feet and that he continued across the intersection; that the driver of the truck attempted to swerve in front of him, which resulted in the collision of the two cars, the left front fender and left end of the front bumper of his car striking the left rear side of the truck.

There is nothing in the record tending to rebut the presumption of correctness of our original opinion and decree. Defendant lays great stress upon the fact that although plaintiff's truck was proceeding up Maple street on the right-hand side thereof, after the collision it continued up Maple street a distance of approximately fifty feet and turned over on the left-hand or river side of the street. This can be easily explained. The evidence is unanimous that plaintiff's truck was struck on its left side near the rear. This would unquestionably have the effect of shoving the rear end of the truck towards South Claiborne avenue, thereby directing the front of the truck diagonally towards the left-hand or river side of Maple street and, as the engine of the truck was running and the gears engaged, the natural result would be for it to pursue a course diagonally across Maple street towards the river side thereof. The only evidence in the record as to the length of the truck is found in the testimony of Tatar, who stated that it was fourteen to sixteen feet long from the top of the radiator to the end of the body, but reducing this to ten feet, the distance which the truck traveled after the impact was only approximately five times its own length. The record further shows, and the trial judge so stated, that the distance from the witness chair to the opposite

wall of the courtroom was forty-one feet; therefore, the fifty feet which the truck went after the collision would be merely ten feet more than the width of the courtroom. It should further be borne in mind that the natural result of the blow would be to tilt the truck thereby wresting control from its operator, all of which shows in our opinion that the speed of the truck was not shown to be excessive. Tatar testified that he was driving eighteen miles per hour. This is corroborated by the testimony of Officer Rodriguez, as against which we have only the testimony of Mr. Munson that he thought the truck was proceeding between thirty and thirty-five miles per hour. Defendant's theory that he had pre-empted the intersection and that plaintiff dashed madly in front of him in an effort to get across the intersection is not borne out by the record. The undisputed physical facts are that the left front fender and left end of the front bumper struck the left rear end of the truck driven by plaintiff; that at the moment of impact the front of the truck was into Maple street slightly above the upper curb line of Burdette street. In other words, the truck was two-thirds at least across the intersection. The truck driven by plaintiff was an old model T Ford totally incapable of the speed or acceleration of the new V 8 model. The model T truck was approaching defendant's car from the right and under the city traffic ordinance, introduced and filed in evidence, had the right of way. The uncontradicted physical facts show conclusively, in our opinion, that had defendant retarded his speed even slightly at the intersection the collision would not have occurred. Further than this, if defendant had swerved to the right ever so slightly the accident would have been avoided. He, therefore, had the last clear chance of avoiding the collision which was caused solely and only by his negligence.

The letter of Dr. Geismar, introduced and filed in evidence, shows that plaintiff was severely bruised on the right side of his body. He was taken to the Charity Hospital in an ambulance where first-aid treatment was administered. He suffered from swelling and pain on account of the injuries to his right ankle, right knee, right shoulder, neck, and the right side of his head. No fractures, however, were found. His right knee was swollen and showed a small brush burn on the upper aspect. The right shoulder was somewhat limited in movement, and there was a small lacerated wound on the right arm. There was also a brush burn on the scalp approximately an inch and a half long. On February 23d, twenty days after the accident, much progress was shown except that plaintiff suffered an occasional headache and was unable to wear his shoe due to swelling. By reason of these injuries an award of $400 would be adequate. The record does not convince us that any permanent injuries were sustained.

[3-5] Plaintiff's suit valued at $25 was ruined, as was his hat valued at $2.95, both of which the record shows were practically new and we think plaintiff is entitled to recover these items. The record further shows that plaintiff earned about $25 a week and that he was disabled for a period of five weeks, which would entitle him to the sum of $125, but inasmuch as he claims only the sum of $112.50 in his petition, any evidence over and above this amount was properly excluded by the trial court and the amount allowed must necessarily be limited thereto.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed, and it is now ordered that there be judgment herein in favor of plaintiff, Thomas Tatar, and against defendants, Edward P. Munson and Allstate Insurance Company of Chicago, Ill., in solido, in the sum of $540.45, together with legal interest thereon from judicial demand until paid, and for all costs of this proceeding.

Reversed.

