289 So.2d 88 (1974)
Ben F. GARLINGTON
v.
Daniel M. KINGSLEY et al.
No. 53675.
Supreme Court of Louisiana.
January 14, 1974.
*89 Chris J. Roy, Dan E. Melichar, Gravel, Roy & Burnes, Alexandria, for plaintiff-applicant.
Leo Gold, Henry B. Bruser, III, Gold, Hall, Hammill & Little, Alexandria, for defendants-respondents.
Robert L. Kleinpeter, Kleinpeter & Nevils, Baton Rouge, amicus curiae for B. R. General Hospital.
James A. George and Gary L. Boland, Baton Rouge, amicus curiae for Amzy Jackson, Jr.
BARHAM, Justice.
Ben F. Garlington filed a suit for damages against Daniel M. Kingsley, M.D. and the Rapides General Hospital, alleging that both defendants were responsible for residual disability resulting from defendants' lack of attention, improper attention and/or mistakes during the post-operative period following a laminectomy performed by defendant Kingsley. Garlington filed subsequent supplemental and amending petitions making the insurers of the above named defendants parties to the suit and alleging generally that the defendant hospital was additionally negligent in failing to properly supervise, select and train its employees. Defendant hospital filed a motion for summary judgment on grounds that the hospital's status as a charitable institution entitled it to tort immunity. The motion for summary judgment was granted by the trial court and the plaintiff appealed that judgment.
Upon the appeal to the Third Circuit, defendant hospital filed an alternative exception of no cause of action on the basis that plaintiff's petition did not allege ultimate facts which would disclose any actionable *90 negligence on the part of the defendant hospital. Defendant hospital contended that the plaintiff had failed to allege with necessary specificity the manner in which the hospital was negligent in the selection, supervision and training of its employees and the connexity between this negligence and the plaintiff's injury. The Court of Appeal reversed and set aside the trial court judgment granting the motion for summary judgment. However, it decided that defendant hospital's exception of no cause of action was well founded because plaintiff's petition failed to sufficiently allege negligence that would constitute an exception to non-liability of so-called charitable institutions. The court maintained the exception subject to plaintiff's right to amend his petition within thirty days to properly state a cause of action against the hospital.
Upon the Court of Appeal's denial of his application for rehearing, Garlington applied to this Court for writs. We granted certiorari (279 So.2d 693) to consider the issue of the continued viability vel non of the much criticized doctrine of charitable immunity. We accept as correct, for the purposes of our review, the finding of both lower courts that Rapides General Hospital does meet the criteria necessary to claim status as a charitable institution.
Respondents here rely upon the case of Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969) for support in urging the applicability of the charitable immunity doctrine which was the basis for the sustaining of the exception of no cause of action. The Grant case was an opinion with only a 3-man clear majority, the other four members of the Court concurring and dissenting on different issues. Three members of the Court dissented particularly from the holding that the doctrine of charitable immunity had legal validity in Louisiana.
The most persuasive argument advanced by relator Garlington, in our opinion, is the fact that positive and express provisions of our Civil Code mandate that: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.", and that "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.". Civil Code Articles 2315 and 2320. In addition, Civil Code Article 2316 provides: "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
There is no foundation in civil law for the doctrine of charitable immunity as pronounced by the Court of Appeal cases cited in the Grant majority opinion. The doctrine is not accepted in any foreign jurisdiction, civilian or common law, and though once perhaps a majority view in the common law states of the United States, it is now a fast waning and dwindling minority theory. It had an inauspicious and a not too reputable beginning in the United States in a case arising in Massachusetts in 1876, McDonald v. Massachusetts General Hospital, 120 Mass. 432, 10 years after the repudiation of the doctrine in England.[1] Although the doctrine has been embodied into law for periods of time in many states, voluminous opinions in the various jurisdictions have vainly attempted to find a logical rationale for it.
While it should be sufficient to state that the doctrine of charitable immunity is not the law in the State of Louisiana, there being express codal provisions to the contrary and no statutory authority to support the exception from liability, it may be interesting and perhaps worthwhile to note the "origin and growth" of the doctrine in Louisiana.
*91 In two early cases involving lumber companies which collected dues or fees from their employees to secure medical care for these employees, this Court considered a master-servant relationship of the doctor to the company.[2] Although language and common law citations from these cases are cited by later appellate decisions, neither of these cases is authority for the doctrine of charitable immunity in Louisiana.
The existence of the doctrine in Louisiana, according to the appellate jurisprudence, rests upon the 1922 case of Jordan v. Touro Infirmary, 123 So. 726 (La.App. Orl.). The Jordan case, attempting to absolve the defendant from liability, first gives a statement of facts from which it is difficult, if not impossible, to find the negligence required in malpractice suits. Then, after a discussion of the master-servant doctrine, it concludes that the nurses, including the one alleged to be negligent, were not servants of the hospital but were to be considered "* * * pro hac vice, as the servants of the surgeon." After this positive legal holding and an irrelevant discussion of common law holdings on charitable immunity, that case states in dictum that a charitable hospital cannot be held responsible for the negligence of its nurses.
The majority in Grant indicated that our refusal of certiorari in cases in which various courts of appeal have applied the doctrine "* * * inferentially, if not directly, * * * sanctioned the doctrine * * *". In Jordan v. Touro, supra, we refused writs with the comment: "The decree is correct." There are few weaker affirmations of appellate decisions, for such a refusal adopts no language, reasoning, or law in the case, but sanctions only the decree. That decree can be supported by the factual statement and the court's holding that the nurses were the servants of the surgeon.
A number of later cases, all in the courts of appeal, often in dicta, found authority in Jordan for charitable immunity.[3] While our Courts of Appeal have attempted to create charitable immunity out of dictum, common law, and disregard for positive codal provisions, this Court, prior to Grant, never, by inference or otherwise, adopted this doctrine.[4] The refusal of writs by this Court, which is usually based upon incomplete records and ex parte applications and without hearing, *92 is not decisional law. This Court's action upon writs may be indicative of a predisposition on a certain legal issue but is not necessarily determinative of that issue. This Court is not bound by its refusal of writs to adopt law expressed in appellate court opinions, although it may well adopt such a case holding as law when, upon a full hearing, it is found that the holding is supported by positive law or, in the absence of positive law, by reason and logic or natural law.
In the states which still retain the charitable immunity or "trust fund" doctrine or vestiges of it, jurisprudence advances illogical and irrational theories for the invoking of such an exception to the usual application of vicarious liability. Our Courts of Appeal, in an attempt to find some philosophy for the doctrine, have vacillated between such theories as "trust fund", public policy, quasi-governmental functions, and waiver. Charitable immunity, although apparently created as a public policy to encourage charities, actually violates the general public policy because it affords great protection to trust funds and certain other properties, thus favoring property rights over personal rights.
The doctrine in Louisiana and in these other states has been mutated, warped, and excepted from so that there is no semblance of uniformity or consistency in the extent and nature of the immunity granted eleemosynary institutions. In Louisiana it has been held in these appellate court decisions and stated in Grant that paying recipients of services and non-paying recipients of services are equally without remedy, but that third parties, visitors, licensees, and in general all those who do not pay for the services of, or received charity from the institutions are not affected by this limitation. Thus, ridiculously and ironically, upon registering and entering a so-called "charitable" institution, one is at the mercy of the negligent employees of that institution, though one pays reasonable or even exorbitant fees for services; yet after discharge, if one slips and falls between the discharge desk and the exit due to an employee's negligence, he is allowed to recover fully for his damages.
The writers in Louisiana have uniformly criticized the Court of Appeal decisions which have grafted the erroneous common law states' doctrine onto our express and well defined law governing responsibility in this area.[5] It may be safely said that the overwhelming view of all of the authorities and writers rejects the doctrine as being unsound in theory and in application.[6] As in many other common law states, in 1951 the Supreme Court of Mississippi overruled prior decisions and repudiated the doctrine in the well reasoned landmark case of Mississippi Baptist Hospital v. Holmes, 214 Miss. 906, 55 So.2d 142, 56 So.2d 709, 25 A.L.R.2d 12.[7]
In a civilian jurisdiction such as ours, where we are bound to follow the positive *93 law, decisional law should not supplant legislative or constitutional authority. As previously noted, the express relevant law is contained in our Civil Code, and would reject the theory of charitable immunity. The enunciation of the correct statement of law in this case is a judicial, and not a legislative, responsibility.[8]
Plaintiff Garlington advances numerous other policy arguments which favor abrogation of the charitable immunity doctrine. While all of the policy arguments appear to have substantial merit, we prefer to base our decision on the infinitely sounder basis of compliance with the mandates set forth in Civil Code Articles 2315, 2316 and 2320. For the reasons set forth hereinabove, Grant v. Touro Infirmary is overruled. We hold that the Rapides General Hospital and other charitable institutions are not immune from suit in tort and that injured parties proceeding against such institutions need not plead or establish those circumstances which some courts have recognized in the past as exceptions to the so-called rule of charitable immunity.
The judgment of the Court of Appeal maintaining defendants' exception of no cause of action is reversed and the case is remanded to the trial court for further proceedings consistent with the views here expressed. Costs of proceedings to date are to be paid by defendants.
SUMMERS, J., concurs in the decree and assigns reasons.
SUMMERS, Justice (concurring in the decree).
Although I agree with the result reached, there are many statements in the majority opinion to which I cannot subscribe.
NOTES
[1] An English case, Heriot's Hospital v. Ross, 12 Clark & F. 507, 8 Eng.Reprint 1508 (1846), espoused a "trust fund" doctrine in dictum, which was followed by several cases until repudiated 20 years later in Mersey Docks v. Gibbs, 11 H.L.Cas. 686, 11 Eng.Reprint 1500 (1866).
[2] Nations v. Ludington, Wells & Van Schaick Lumber Co., 133 La. 657, 63 So. 257 (1913); Congdon v. Louisiana Sawmill Co., Ltd., 143 La. 209, 78 So. 470 (1918).
[3] Demien v. Y. M. C. A., 5 Peltier's Orl. App. 11 (1922); Foye v. St. Francis Sanitarium, 2 La.App. 305 (2nd Cir. 1925) (dictum); Thibodaux v. Sisters of Charity, 11 La. App. 423, 123 So. 466 (2nd Cir. 1929) (amazingly applying the rule of stare decisis); Bougon v. Volunteers of America, 151 So. 797 (La.App.Orl.1934) (dictum); Messina v. Societe Francaise De Bienfaissance, etc., 170 So. 801 (La.App.Orl.1936) (dictum); Jurjevich v. Hotel Dieu, 11 So.2d 632 (La.App.Orl.1943) (which, after finding the doctrine firmly established, theorizes that "* * * to the extent that such institutions administer to the indigent sick, they are discharging governmental functions * * *"); D'Antoni v. Sara Mayo Hospital, 144 So.2d 643 (La.App.4th Cir. 1962); Hill v. Eye, Ear, Nose & Throat Hospital, 200 So.2d 34 (La.App.4th Cir. 1967) (wherein it should be noted that without any finding or reference to charitable services the court concludes that "* * * hospitals are regarded as charitable organizations entitled to immunity from suit"). But see Stanley v. Schumpert, 117 La. 255, 41 So. 565 (1906), wherein this Supreme Court specifically held a hospital liable and responsible for the negligence of a nurse who applied alcohol to the patient's eye instead of the proper solution. Danks v. Maher, 177 So.2d 412 (La.App.4th Cir. 1965), seems to rationalize that the Supreme Court case of Stanley v. Schumpert, which never considered charitable immunity, was differentiating between administrative and professional acts of the nurses, and that case relied upon Stanley as a basis for its holdings. Finally, see Humphreys v. McComiskey, 159 So.2d 380 (La.App.4th Cir. 1964).
[4] Writs have been applied for and considered only in the Jordan, Messina, D'Antoni and Jurjevich cases. In each of these a qualified denial of writs was made.
[5] 17 Tulane L.Rev. 621, an excellent comment by Robert McLean Jeter, Jr.; 26 Tulane L.Rev. 396; 32 Tulane L.Rev. 138.
[6] Mr. Justice Sanders (now Chief Justice) stated in dissent in Grant v. Touro Infirmary, supra,:

"As conclusively demonstrated by the doctrinal writers, the doctrine is unsound and has outlived its usefulness. See e. g., Appleman, The Tort Liability of Charitable Institutions, 1936, 22 A.B.A.J. 48; Feezer, The Tort Liability of Charities, 1928, 77 U.Pa.L.Rev. 191; McCaskill, Respondeat Superior as Applied in New York to Quasi-Public and Eleemosynary Institutions, 1920, 5 Corn.L.Q. 409, 6 Corn.L.Q. 56; Spencer, Ray v. Tucson Medical Center: A Reappraisal of Tort Liability of Charities, 1951, 24 Rocky Mt.L.Rev. 51; Notes, 1925, 34 Yale L.J. 316; 1938, 38 Col.L.Rev. 1485; 1938, 48 Yale L.J. 81; 1950, 25 N.Y.U.L.Rev. 612; 1951, 20 U.Cin. L.Rev. 412; 1951, 30 N.C.L.Rev. 67; 1952, 6 Ark.L.Rev. 209; 1953, 32 N.C.L.Rev. 129; 1954, 32 Tex.L.Rev. 376; 1959, 37 N.C.L.Rev. 209; 1957, 19 U.Pitt.L.Rev. 119. In recent years, approximately twenty states have abandoned the doctrine. Prosser, Law of Torts (3rd ed. 1964) § 127, pp. 1023-1024."
[7] See complete discussion in that case, and the Annotation in 25 A.L.R.2d at pp. 29 et seq.
[8] As Mr. Justice Sanders said in dissent in Grant v. Touro, supra:

"Since the courts established the doctrine, this Court can now repudiate it. I would do so for the betterment of the law."