ESTATE OF ADAM R. HAYDEL, SR., CECILIA ROBERT, TESTAMENTARY EXECUTRIX, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Haydel v. Commissioner
Docket No. 2901-88
United States Tax Court
T.C. Memo 1991-507; 1991 Tax Ct. Memo LEXIS 556; 62 T.C.M. (CCH) 956; T.C.M. (RIA) 91507; October 7, 1991, Filed *556 Decision will be entered under Rule 155. Vallerie Oxner, for the petitioner. Joseph Ineich, for the respondent. SHIELDS, Judge. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION In a deficiency notice dated November 17, 1987, respondent determined a deficiency in the Federal estate tax of the Estate of Adam R. Haydel, Sr. (petitioner), in the amount of $ 653,280 and an addition to tax of $ 155,918 under section 6651(a)(1). [1]
After concessions, [2] the issues for decision are: (1) Whether during his lifetime Adam R. Haydel, Sr. (decedent), and his surviving spouse entered into a valid contract under the terms of which they renounced the applicable community property provisions of Louisiana law and agreed that each of them would hold his or her properties separate and apart from *557 the other; (2) the fair market value of decedent's interest in certain real properties and corporate stocks; and (3) whether petitioner is liable for the addition to tax under section 6651(a)(1) for failing to timely file an estate tax return and pay the tax due thereon. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by reference. Decedent died testate on September 19, 1981. He was survived by his second wife, Clara Mae Simon Haydel (Mrs. Haydel), and their two children, Adam R. Haydel, Jr., and Cecilia Haydel Robert. He was also survived by James V. Haydel, a brother, and Theresa Haydel Rocke, Rosemary Haydel Garranger, *558 and Thelma Haydel Hart, his three children by a former wife. On or about June 15, 1982, petitioner filed with respondent an application for an extension of time to December 15, 1982, within which to file the Federal estate tax return of decedent's estate. Respondent granted the extension to December 15, 1982, but the estate tax return was not filed by petitioner until November 27, 1984. On February 17, 1942, decedent and Mrs. Haydel were married. Since they were residents of Louisiana and intended to maintain their matrimonial domicile in Louisiana, they knew before their marriage that the marriage would create a community of acquets and gains (community property) between them in the absence of an agreement to the contrary. La. Civ. Code Ann. art. 2334 (West 1985). Consequently, on February 16, 1942, the day before their wedding, they executed a marriage contract (prenuptial agreement) which purported to renounce a community of acquets and gains, i.e., the right to hold assets acquired during their marriage as community property. After the identification of the parties and other formal language, the prenuptial agreement reads in pertinent part as follows: That whereas it *559 is their intention to enter into the bonds of matrimony, they have in consequence agreed before the celebration of their marriage, which is to be solemnized and to take place shortly, to establish by a marriage contract the civil rules and conditions which shall govern their said contemplated marriage; Wherefore * * * the said contracting parties have agreed, determined and contracted, and do by these presents mutually agree, determine and contract as follows, to wit: That the said intended husband and wife shall be separate in property; accordingly, they hereby formally renounce the dispositions of the civil law of Louisiana, which establish a community of acquets and gains between them as husband and wife; That all property and effects belonging to affiants, whether owned by them at the time of the celebration of the said intended marriage or acquired during said marriage, are hereby declared to be the separate and paraphernal property of each of them respectively. In testimony of all of which, the said parties, after reading this act, severally declared that it contained all the agreements made by them; that on this 16th day of February, 1942, prior to their marriage, they *560 hereunto sign their names in the presence of me and the undersigned witnesses.
The prenuptial agreement bears the signature of decedent and Mrs. Haydel as well as the signature of Flavia Simon, who was the mother of Mrs. Haydel. The document also bears the illegible signature of a second purported witness, who is not identified in the record, and the signature and seal of Raymond Kierr (Mr. Kierr), an attorney and notary public. On December 21, 1979, decedent executed his will. Seven days later on December 28, 1979, decedent and Mrs. Haydel executed a document entitled Matrimonial Agreement wherein they (1) pointed out that the prenuptial agreement executed by them before their marriage might be invalid because it was not properly executed or witnessed, and (2) agreed that if the prenuptial agreement "dated February 16, 1942, kept them from having a community of acquets and gains [community property] * * * [they] each declared that effective January 1, 1980, THEY WISH TO, AND DO HEREBY, SUBJECT THEMSELVES AND THEIR PROPERTY TO THE LEGAL COMMUNITY OF ACQUETS AND GAINS." In the matrimonial agreement of December 28, 1979, decedent and Mrs. Haydel further agreed that "If * * * the *561 * * * paper of February 16, 1942, be declared to be a valid Marriage Contract, * * * the agreement they sign today shall be applicable only to property acquired, * * * on or after January 1, 1980." At the date of the execution of the prenuptial agreement, Mr. Kierr had been performing legal services for decedent for some time. After the prenuptial agreement was executed, decedent invested in real estate both individually and as a coowner with others. At first Mr. Kierr only provided legal services in connection with decedent's acquisitions. However, as time passed, Mr. Kierr became a coowner with decedent in certain assets. At decedent's death, Mr. Kierr and the decedent jointly owned several parcels of real property and were costockholders in several corporations. Mr. Kierr was not the only lawyer who represented decedent, nor was he the only person who jointly owned real property with decedent. Decedent's investments were successful and at his death he owned substantial interests in numerous parcels of real property, including developed and undeveloped lots, industrial tracts, and shopping centers. He also owned a restaurant, a cocktail lounge, and stock in a number of closely *562 held corporations, including Majestic Mortuary Services, Inc., and Majestic Life Insurance Company. Mr. Kierr maintained complete and accurate records of the properties which he owned with decedent. Decedent's records were not so well kept, and the records he had at his death were subsequently damaged to an extent not made clear by the record as the result of the leakage of water into the basement where he had them stored. Due to the poor condition of decedent's records, the estate was forced to hire abstractors to search the public records of several parishes in which decedent was known to have an interest in property in order to determine the nature and extent of his ownership at death. These searches were completed in approximately 1 month. In the will executed on December 21, 1979, decedent named as executors of his estate Mr. Kierr, Mrs. Haydel, and Cecilia Robert, the daughter of decedent and Mrs. Haydel. Mrs. Haydel was unable to serve as a coexecutor because of health problems and Mr. Kierr chose not to serve because he felt that his position as the former attorney, coowner, and close friend of decedent compromised his ability to serve as an impartial executor. Mr. *563 Kierr's law firm also withdrew from its representation of the estate for the same reason and because the firm's specialty was maritime law and decedent's estate was larger and its administration was more complex than any estate which the firm had represented in the past. As a result, Ms. Robert, who had a degree in business administration from Loyola University and was a director of one of her father's corporations, was confirmed on August 19, 1982, over the objection of decedent's three children by his former marriage as the only executor of the estate by the Civil District Court for the Parish of Orleans. At all relevant times Ms. Robert was a resident of Louisiana. After Mr. Kierr's law firm withdrew in July of 1982 as counsel for the estate, Ms. Robert retained the services of a second law firm. It was the second firm which succeeded in spite of the objection of decedent's children by his first wife in obtaining the confirmation of Ms. Robert as the only executor of the estate. However, shortly after her confirmation she learned that certain individuals who resided near her home were employed by the second firm and became concerned that the confidentiality of the estate's *564 affairs might not be protected. Consequently she terminated the employment of the second firm and engaged a third firm which was still representing the estate at the time of the trial of this matter. During the administration of the estate, Ms. Robert challenged in the civil district court the validity of the prenuptial agreement dated February 16, 1942, primarily on the same grounds set forth in the marital agreement dated December 28, 1979, i.e., that the prenuptial agreement was invalid because it was not executed by decedent in the presence of one of the witnesses to the agreement. On September 16, 1987, the Civil District Court for the Parish of Orleans entered a decree as follows: IT IS ORDERED, ADJUDGED AND DECREED that the decedent, Adam R. Haydel, Sr., and Clara Mae Simon entered into a legally valid marriage contract on February 16, 1942 by act before Raymond H. Kierr, Notary Public * * * wherein they agreed that upon their marriage they be separate in property and they renounced the community of acquets and gains, and accordingly all properties purchased and other acquisitions by decedent from the date of his marriage through December 31, 1979 became separate properties *565 and acquisitions of the decedent and did not become community property.
The executrix appealed the decree upholding the validity of the prenuptial agreement to the Court of Appeals for the Fourth Circuit of Louisiana which in 1988 concluded: A review of the record indicates that the document evidencing the 1942 matrimonial agreement does not appear to be defective on its face. It is signed by both parties, Adam R. Haydel and Clara Mae Simon. It is signed by two witnesses, Flavia Simon and another witness, whose name is not legible. Lastly, it is signed and notarized by the notary public, Raymond Kierr. The record also demonstrates that both parties recognized the effects of this matrimonial agreement for more than thirty-seven years. Included as exhibits in the record are three acts of sale executed by decedent purporting to sell pieces of real estate to third parties. Two of these acts, those dated March 9, 1972 and September 29, 1977, specifically recite that Adam R. Haydel was married to Clara Mae Simon, was presently living and residing with her, but that they were separate in property by virtue of a marriage contract dated February 16, 1942. Those acts further recite *566 that the marriage contract was made before Raymond Kierr, notary public and was recorded in M.O.B. 1644, folio 38. The third act, dated March 20, 1963, merely states that a marriage contract executed on February 16, 1942 existed between decedent and Clara Mae Simon. We conclude that the defendant failed to carry her burden of proof. The evidence and testimony presented in the trial court by defendant was not sufficient to nullify the validity of an authentic act which was in effect for nearly forty years. The factual conclusion of the trial court must be given great weight and will not be reversed on appeal absent manifest error. Moreover, a trial judge's evaluation of credibility and reasonable inferences of fact should not be disturbed on appeal even if the appellate court feels its own evaluation or inferences might be more reasonable. * * * [Succession of Haydel, 529 So. 2d 856, 858-859 (La. Ct. App. 1988). Citation omitted.]
Ms. Robert's petition for a writ of certiorari was summarily disposed of by the Supreme Court of Louisiana as follows: "Denied. The result [in the lower court] is correct." See Succession of Haydel, 533 So. 2d 363 (La. 1988). *567 Following the denial of the petition for certiorari, Mrs. Haydel, the widow of decedent and the mother of Ms. Robert, petitioned the Civil District Court for the Parish of Orleans to annul its judgment of September 16, 1987, on the grounds that she was not properly served in that matter and as a result was unable to appear and testify. On May 16, 1990, the district court dismissed Mrs. Haydel's petition. Her appeal from the dismissal was still pending at the trial of this matter in December of 1990. Ms. Robert in her capacity as the executrix was involved during the administration of the estate in a number of other lawsuits including actions in the local courts to evict tenants from properties owned by the estate and to establish title to or remove encumbrances from other properties. She was also involved in suits in this Court concerning decedent's liability and the liability of one of his corporations for income taxes and in the defense of a lawsuit by a woman who was purportedly injured in a cemetery owned by one of decedent's corporations. In or about the latter part of 1982 and again in or about March of 1984, the three children of decedent by his earlier marriage applied *568 to the district court for an order directing the executrix to render a complete accounting of her "actions and/or inactions" on behalf of the estate and particularly to file with the court as required by State law a detailed descriptive list of assets in order to provide the court, heirs, creditors, and other interested parties with a complete and concise list of the nature and value of the properties in the estate. See Succession of Willis v. Martin, 228 So. 2d 732 (La. Ct. App. 1969). The above matter was the beginning of a series of legal actions by the children of decedent by his first marriage against Ms. Robert as executrix of the estate. The primary goal of the various actions was apparently the removal of Ms. Robert as executrix for failing to timely perform certain duties such as accounting for decedent's assets by preparing and filing a detailed descriptive list of assets, and failing to file estate and inheritance tax returns. As a result of one or more of such actions, Ms. Robert on or about July 24, 1984, filed with the civil district court a detailed descriptive list of the estate's assets. However, the civil district court subsequently found *569 this list to be incomplete and on July 3, 1985, a consent judgment was entered by the civil district court in which Ms. Robert was ordered among other things: (1) To prepare and file by a specified date a complete descriptive list of all estate properties; (2) to employ Fred Guice, an appraiser, to appraise all real properties; and (3) to furnish the court with a complete copy of the Federal estate tax return "as soon as same is submitted to Federal authorities." Again on November 12, 1986, the civil district court considered motions in which the three children of decedent by his first marriage called the court's attention to Ms. Robert's failure to comply with the terms of the consent judgment. The court stated that the position of the movants was "well founded" and once again ordered Ms. Robert to file within 30 days a complete descriptive list of the properties in the estate and a list of the appraisals on all such properties. Finally, on September 17, 1987, she filed an amended list with the district court. In the meantime on November 27, 1984, Ms. Robert had filed a Federal estate tax return with respondent and had attached thereto a copy of the original list of assets. *570 Consequently both lists, which were subscribed and sworn to by Ms. Robert in the presence of a notary public, were available to respondent's agents in connection with the determination of the Federal estate tax due from the estate. In the preamble to both lists it is stated that the executrix "does hereby, under oath, present * * * the following * * * detailed descriptive list of all of the assets that comprise the estate of the decedent, showing the actual cash value of each item as of the date of decedent's death." In the original detailed descriptive list of assets filed with the civil district court on or about July 25, 1984, Ms. Robert listed as the only assets of the estate 21 items of real property in which decedent had an undivided interest. The total value placed on the 21 items in the original list was $ 1,118,166 On the Federal estate tax return the total value of these properties was decreased to $ 1,047,700 and one-half of that amount, or $ 523,850, was reported as the value of decedent's community interest (50 percent). In the amended detailed descriptive list of assets filed with the civil district court on September 17, 1987, the total value of the 21 items of real *571 estate shown on the original list, the extent of decedent's undivided interest in each item, and the value of his interests were reported as follows: Value of
Decedent's
Total
decedent's
Item
interest
value
interest
1
3/5
$ 28,000
$ 16,800
2
3/5
15,500
9,300
3
3/5
9,000
5,400
4
3/5
17,900
10,740
5
3/5
10,000
6,000
6
3/5
24,500
14,700
7
3/5
10,500
6,300
8
3/5
10,500
6,300
9
3/5
10,800
6,480
10
3/5
11,000
6,600
11
3/5
11,000
6,600
12
3/5
326,000
195,600
13
3/5
11,000
6,600
14
3/5
120,000
72,000
15
1/2
75,000
37,500
16
3/5
13,000
7,800
17
3/5
13,000
7,800
18
3/10
1,342,000
402,600
19
1/2
8,000
4,000
20
3/10
636,000
190,800
21A
3/10
279,000
83,700
21B
3/10
103,000
30,900
21C
3/10
103,000
30,900
21D
3/10
71,000
21,300
Total
3,258,700
1,186,720
Items 1 through 14 and items 16 and 17 of the above properties were jointly owned by decedent and his brother, James V. Haydel. Items 15 and 19 were jointly owned by decedent and Mr. Kierr. Items 18 and 21A through 21D were jointly owned by decedent, his brother, and Mr. Kierr. In the deficiency notice respondent determined: *572 (1) That decedent's interests in these 21 items were not held by decedent as community property but instead were held by him as separate assets and the full value of his undivided interests in the properties was includable in his estate, and (2) that the total value of such interests was $ 1,186,720 at the time of his death as shown on the amended list filed by Ms. Robert with the civil district court. In addition to the 21 items of property shown on the original list, the amended detailed descriptive list of assets filed with the civil district court on September 17, 1987, contained five other items of real property in which decedent had an interest on the date of his death. These items were omitted from the estate tax return filed with respondent. On the amended list the five additional items, their total values, the extent of decedent's interest in each item, and the value of his interests were reported as follows: Value of
Decedent's
Total
decedent's
Item
interest
value
interest
22
100%
$ 58,000
$ 58,000
23
100%
56,000
56,000
24
3/5
50,000
30,000
25
3/5
8,000
4,800
26
3/5
298,000
178,980
Total
470,000
327,780
*573 Items 24, 25, and 26 of the above properties were jointly owned by decedent with his brother, James V. Haydel. In the amended list of assets filed with the district court on September 17, 1987, Ms. Robert reported that decedent owned 395 shares of common stock in Majestic Mortuary with a value per share of $ 171.84 for a total of $ 67,876.80 and 252 shares of common stock in Majestic Life with a value per share of $ 642 for a total of $ 161,784. At trial the parties stipulated that decedent owned at his death 395 shares of common stock in Majestic Mortuary which had a total value of $ 67,876.80, and 252 shares of common stock in Majestic Life which had a total value of $ 161,784. At his death decedent owned 60 percent of the outstanding common stock in five corporations with values as follows: D.O.D.
value of
Name of
Decedent's
decedent's
corporation
percentage
interest
Haydel Realty Co.
60%
$ 370,056
Haydel Manor, Inc.
60
72,000
Manor Builders, Inc.
60
39,180
Gentilly Land Co.
60
19,013
Boutte Corp.
60
30,000
Decedent also owned 30 percent of the outstanding common stock in Admiral Isle, Inc., which had a value of $ 69,000. The other outstanding stocks *574 in each of the above corporations, including Majestic Mortuary and Majestic Life, were owned by decedent's brother, James V. Haydel, and/or decedent's lawyer, Mr. Kierr. In the petition and in other preliminary matters including its trial memorandum and opening statement, as well as on brief, petitioner repeatedly claims that the undivided value of decedent's interest in the real properties jointly owned with others and the value of his common stock in Majestic Mortuary, Majestic Life, Haydel Realty, Haydel Manor, Manor Builders, Gentilly Land, Admiral Isle, and Boutte Corporation should be discounted by 25 percent because his interest in each of such properties and corporations was only an undivided fraction of the whole. However, at trial the parties submitted a detailed stipulation containing 90 paragraphs of facts which we are to consider conclusive for the purposes of this case. In paragraph 15 of the stipulation, which contains no reference to a fractional discount, the parties agree with respect to the 21 items of real property shown on both the original and amended lists filed with the civil district court as follows: The following parcels of property are described as *575 items 1. through 21. on the Amended Detailed Descriptive List of Assets under the heading of Immovable Property (Joint Exhibit 11-K). For each item of immovable property (which corresponds to items 1 through 21 of Joint Exhibit 11-K), the parties stipulate to the decedent's interest on the date of death ("D.O.D."), and the fair market value as of the date of death of the decedent's interest:
Decedent's
Fair market value
interest
of decedent's
Item no.
at D.O.D.
interest at D.O.D.
1.
3/5
$ 16,800.00
2.
3/5
9,300.00
3.
3/5
5,400.00
4.
3/5
14,700.00
5.
3/5
6,000.00
6.
3/5
10,740.00
7.
3/5
6,300.00
8.
3/5
6,300.00
9.
3/5
6,480.00
10.
3/5
6,600.00
11.
3/5
6,600.00
12.
3/5
195,600.00
13.
3/5
6,600.00
14.
3/5
72,000.00
15.
1/2
37,500.00
16.
3/5
7,800.00
17.
3/5
7,800.00
18.
3/10
402,600.00
19.
1/2
4,000.00
20.
3/10
190,800.00
21. Per the Detailed Descriptive List of Assets attached to Form 706 (Joint Exhibit 2-B), the decedent was shown to have owned a 30 percent interest in property, which interest was valued at $ 166,800.00 as of the date of death. Per the Amended Detailed Descriptive List of Assets (Joint Exhibit 11-K), parcel number 21 was *576 subdivided into four pieces described and valued as follows: 21-A. The total value of this parcel, known as Corinne Avenue Extension Number 3 located in Chalmette, Louisiana, as of the decedent's date of death was $ 279,000.00. The value of the decedent's undivided 30 percent interest as of the date of death was $ 83,700.00. 21-B The total value of this parcel, described as Square G, Lot 11, Corinne Avenue corner Judge Perez Drive, Chalmette, Louisiana, as of the decedent's date of death was $ 103,000.00. The value of the decedent's undivided 30 percent interest as of the date of death was $ 30,900.00. 21-C The total value of this parcel, described as Square H, Lot 12, Corinne Avenue corner Judge Perez Drive, Chalmette, Louisiana, as of the decedent's date of death was $ 103,000.00. The value of the decedent's undivided 30 percent interest as of the date of death was $ 30,900.00. 21-D The total value of this parcel, described as Square A, Lots 1 and 2, Corinne Avenue corner St. Bernard Highway, Chalmette, Louisiana, as of the decedent's date of death was $ 71,000.00. The value of the decedent's undivided 30 percent interest as of the date of death was $ 21,300.00.
*577 With respect to the five additional parcels shown at items 22, 23, 24, 25, and 26 on the amended list, the parties in paragraph 20 of their stipulation agree as follows: 20. * * * the decedent also owned interests in the following parcels with accompanying date of death values and ownership interests (sequentially numbered 22 through 26 on the Amended Detailed Descriptive List of Assets): a. 2539-41 A.P. Tureaud Avenue (Item 22 in the Amended Detailed Descriptive List of Assets). The total value of this parcel, located in New Orleans, Louisiana, as of the decedent's date of death was $ 58,000.00 b. Square 1033, A.P. Tureaud Avenue (Item 23 in the Amended Detailed Descriptive List of Assets). The total value of this parcel, located in New Orleans, Louisiana, as of the decedent's date of death was $ 56,000.00 c. Square 90 in the First District (Item 24 in the Amended Detailed Descriptive List of Assets). The total value of this parcel, located in New Orleans, Louisiana, as of the decedent's date of death was $ 50,000.00. The value of the decedent's undivided 60 percent interest as of the date of death was $ 30,000.00 d. Lots 3 and 4, Square 17, Haydel Street (Item 25 *578 in the Amended Detailed Descriptive List of Assets). The total value of this parcel, located in New Orleans, Louisiana, as of the decedent's date of death was $ 8,000.00. The value of the decedent's undivided 60 percent interest as of the date of death was $ 4,800.00. e. Lots 91 and 93, Read Road (Item 26 in the Amended Detailed Descriptive List of Assets). The total value of this parcel, located in New Orleans, Louisiana, as of the decedent's date of death was $ 298,300.00. The value of the decedent's undivided 60 percent interest as of the date of death was $ 178,980.00
With respect to the common stocks owned by decedent, the parties agree in paragraphs 21 through 28 of their stipulation as follows: 21. The decedent owned at the date of death 395 shares of common stock of Majestic Mortuary Services, Inc. (Item 27 in the Amended Detailed Descriptive List of Assets). The shares were valued at $ 171.84 per share as of that date by the Estate Tax Examiner for the Internal Revenue Service. The value of the decedent's interest stated on the Amended Detailed Descriptive List of Assets as of the date of death was $ 67,876.80. 22. The decedent owned at the date of death *579 252 shares of common stock of Majestic Life Insurance Company (Item 28 in the Amended Detailed Descriptive List of Assets). These shares were registered in the name of Adam R. Haydel, Sr. The shares were valued at $ 642.00 per share as of that date by the Estate Tax Examiner for the Internal Revenue Service. The value of the decedent's interest stated on the Amended Detailed Descriptive List of Assets as of the date of death was $ 161,784.00. 23. The decedent owned at the date of death 60 percent of the outstanding common stock of Haydel Realty Co., Inc. The value of this interest was $ 370,056.00 as of that date (Item 29 in the Amended Detailed Descriptive List of Assets). 24. The decedent owned at the date of death 60 percent of the outstanding common stock of Haydel Manor, Inc. The value of this interest was $ 72,000.00 as of that date (Item 30 in the Amended Detailed Descriptive List of Assets). 25. The decedent owned at the date of death 60 percent of the outstanding common stock of Manor Builders, Inc. The value of this interest was $ 39,180.00 as of that date (Item 33 in the Amended Detailed Descriptive List of Assets). 26. The decedent owned at the date of death *580 common stock representing a 60 percent interest in Gentilly Land Company. The value of this interest was $ 19,013.00 as of that date (Item 35 in the Amended Detailed Descriptive List of Assets). 27. The decedent owned at the date of death common stock representing a 30 percent interest in Admiral Isle, Inc. The value of this interest was $ 69,000.00 as of that date (Item 36 in the Amended Detailed Descriptive List of Assets). 28. The decedent owned at the date of death common stock representing a 60 percent interest in Boutte Corporation. The value of this interest was $ 30,000.00 as of that date (Item 37 in the Amended Detailed Descriptive List of Assets).
OPINION (1) Ownership of property. Petitioner contends that the prenuptial agreement executed by decedent and Mrs. Haydel on February 16, 1942, was void and did not serve as a valid renunciation by decedent and Mrs. Haydel of the community property provisions of Louisiana law. Therefore, according to petitioner, all assets owned by either of them at decedent's death constituted community property and only one half of the value of such assets is includable in his estate. Conversely, respondent contends that *581 the prenuptial agreement constituted a valid renunciation of the community property provisions and, therefore, the full value of all assets separately owned by decedent at his death are included in his estate. In support of the contention that the prenuptial agreement was void, petitioner relies upon the testimony of Mrs. Haydel that decedent did not sign the agreement in the presence of her mother, Flavia Simon, one of the purported attesting witnesses, as required by the Louisiana law. See, e.g. Rittiner v. Sinclair, 374 So. 2d 680 (La. Ct. App. 1978). The nature and extent of decedent's interest in property is a matter of State law and in determining whether the prenuptial agreement was valid we are "in effect, sitting as a state court" and are bound by any applicable decisions of the Supreme Court of Louisiana. Commissioner v. Estate of Bosch, 387 U.S. 456, 465, 18 L. Ed. 2d 886, 87 S. Ct. 1776 (1967); Estate of Fulmer v. Commissioner, 83 T.C. 302, 304 (1984). This is true because "the State's highest court is the best authority on its own law." Commissioner v. Estate of Bosch, supra at 465. We, however, are required to give *582 "proper regard" to relevant rulings by any other court of Louisiana. Commissioner v. Estate of Bosch, supra at 465; Estate of Harmon v. Commissioner, 84 T.C. 329, 333 (1985). In support of his contention that the disputed agreement in this case was valid, respondent relies upon the refusal by the Supreme Court of Louisiana to grant certiorari to review the decisions in which the lower State courts had found the agreement was valid. However, a denial of a petition for certiorari does not constitute a decision on the merits of a case. Farr v. Pitchess, 409 U.S. 1243, 34 L. Ed. 2d 655, 93 S. Ct. 593 (1973); see also United States v. Carver, 260 U.S. 482, 490, 67 L. Ed. 361, 43 S. Ct. 181 (1923); Fainblatt v. Commissioner, 27 T.C. 989, 996 (1957); Garlington v. Kingsley, 289 So. 2d 88, 91-92 (La. 1974). Therefore, even though the denial of certiorari in this case may be persuasive as to the Supreme Court's predisposition on the legal issue involved, it is not authoritative. DeBattista v. Argonaut-Southwest Ins. Co., 403 So. 2d 26 (La. 1981); Colonial Pipeline Co. v. Agerton, 289 So. 2d 93, 96 (La. 1974); *583 Garlington v. Kingsley, supra.The same conclusion is applicable where as here the Louisiana Supreme Court not only denied the petition for certiorari but also noted that the decision below was correct. Coco v. Winston Industries, Inc., 341 So. 2d 332, 335 n.1 (La. 1976); Glassell, Taylor & Robinson v. John W. Harris Associates, Inc., 209 La. 957, 26 So. 2d 1, 8 (La. 1946). Nevertheless, when proper regard is given in the case before us to the decisions of the Louisiana appellate court and the trial court, we are convinced and so find that the prenuptial agreement of February 6, 1942, was valid and constituted a renunciation by decedent and Mrs. Haydel of the community property provisions of Louisiana law. Therefore, the assets owned by decedent at his death constituted separate property and are includable in his estate in their entirety. (2) Valuation of decedent's interest in real properties and stocks. The determination of the fair market value of property at a given date is a question of fact to be resolved by consideration of all relevant evidence in the record. Kaplan v. Commissioner, 43 T.C. 663, 665 (1965). *584 Fair market value is also a question of judgment rather than mathematics. Hamm v. Commissioner, 325 F.2d 934, 940 (8th Cir. 1963), affg. a Memorandum Opinion of this Court; Duncan Industries, Inc. v. Commissioner, 73 T.C. 266 (1979). Consequently, by its very nature, valuation is an approximation derived from all the evidence. Helvering v. Safe Deposit & Trust Co., 316 U.S. 56, 86 L. Ed. 1266, 62 S. Ct. 925 (1942); Silverman v. Commissioner, 538 F.2d 927, 933 (2d Cir. 1976), affg. a Memorandum Opinion of this Court. Respondent's determinations as set out in the notice of deficiency with respect to the fair market value of the subject properties are presumptively correct, and the burden of proving a lesser value rests on petitioner. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). a. Decedent's interests in real properties. As set forth in our findings decedent had an undivided interest in 27 items of real property. With respect to items 1 through 21D and items 24 through 26, the parties have not only clearly stipulated the extent of decedent's interest in each item on the date of death but also *585 the fair market value of such interest in the following manner: Decedent's
Fair market value
interest
of decedent's
Item no.
at D.O.D.
interest at D.O.D.
1
3/5
$ 16,800
2
3/5
9,300
3
3/5
5,400
4
3/5
14,700
5
3/5
6,000
6
3/5
10,740
7
3/5
6,300
8
3/5
6,300
9
3/5
6,480
10
3/5
6,600
11
3/5
6,600
12
3/5
195,600
13
3/5
6,600
14
3/5
72,000
15
1/2
37,500
16
3/5
7,800
17
3/5
7,800
18
3/10
402,600
19
1/2
4,000
20
3/10
190,800
21A
3/10
83,700
21B
3/10
30,900
21C
3/10
30,900
21D
3/10
21,300
24
3/5
30,000
25
3/5
4,800
26
3/5
178,980
As set forth in our findings, decedent's interests in these items vary from three-tenths (30 percent) in 6 parcels (18, 20, 21A, 21B, 21C, and 21D), to one-half (50 percent) in 2 parcels (15 and 19), to three-fifths (60 percent) in 19 parcels (1 through 14, 16, 17, 24, 25, and 26). We have also found (1) that in each parcel where decedent owned a three-fifths interest his brother owned the other two-fifths interest; (2) in each parcel where decedent owned a one-half interest his lawyer owned the other one-half interest; and (3) in each parcel where decedent owned a three-tenths interest his brother and his lawyer owned the *586 other seven-tenths interest. However, for some reason the parties have failed to stipulate the extent of decedent's interest in items 22 and 23, but they did stipulate that the total values of these items at the date of death were $ 58,000 and $ 56,000 respectively. Furthermore, by stipulation the parties placed in the record the amended list of assets filed with the civil district court in which the executrix under oath reported these parcels were included in the estate at their full value. Since the record contains no indication by either party that decedent owned less than an entire interest in each of these properties or that the values shown in the amended list for these parcels are incorrect, it is apparent from the record as a whole that decedent owned the entire interest in each parcel and that the values of these parcels were $ 58,000 and $ 56,000, respectively. Petitioner contends that the value of decedent's interest in each of the items of real estate other than items 22 and 23 should be discounted by 25 percent because he owned only an undivided fraction of each parcel. The fair market value of a fractional interest in real property cannot as a general rule be derived *587 by simply applying the percentage of the interest in the whole to the value of the entire property. See Propstra v. United States, 680 F.2d 1248 (9th Cir. 1982); Estate of Campanari v. Commissioner, 5 T.C. 488, 492 (1945); Estate of Henry v. Commissioner, 4 T.C. 423, 447 (1944), affd. 161 F.2d 574 (3d Cir. 1947). The applicability of a discount for a fractional interest, when at issue, is a question of fact to be resolved from the entire record. Estate of Fawcett v. Commissioner, 64 T.C. 889, 898 (1975); Estate of Campanari v. Commissioner, supra.However, in this case, the parties have clearly stipulated not only the total value of the jointly owned properties but also the value of decedent's undivided interest in each parcel. The effect of such a stipulation is covered by Rule 91(e), which reads as follows: (e) Binding Effect: A stipulation shall be treated, to the extent of its terms, as a conclusive admission by the parties to the stipulation, unless otherwise permitted by the Court or agreed upon by those parties. The Court will not permit a party to *588 a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires. A stipulation and the admissions therein shall be binding and have effect only in the pending case and not for any other purpose, and cannot be used against any of the parties thereto in any other case or proceeding.
Under Rule 91(e) a factual stipulation entered into at trial is binding on the parties, unless the stipulated fact is clearly contradicted by other facts in the record or the aggrieved party can clearly demonstrate that justice requires the stipulated fact to be disregarded. Stamos v. Commissioner, 87 T.C. 1451, 1454 (1986); Jasionowski v. Commissioner, 66 T.C. 312, 318 (1976). Here, however, we are unable to conclude from the record before us that the stipulated values of decedent's interests in the real properties that he jointly owned with his brother and his lawyer are contradicted by other facts in the record. We are also unable to conclude that the parties did or did not take into consideration the fractional interests owned by decedent in arriving at the stipulated values. Accordingly, *589 we are unable to find that justice requires us to disregard the stipulated values placed on his fractional interests in the jointly owned properties. Therefore, on this record we conclude that the stipulated amounts correctly reflect the values of decedent's interests in the jointly owned real properties. b. Decedent's common stocks. Decedent owned at his death common stocks in Majestic Mortuary, Majestic Life, Haydel Realty, Haydel Manor, Manor Builders, Gentilly Land, Admiral Isle, and Boutte Corporation. Here again the parties by stipulation are in agreement with respect to the percentage of outstanding stock owned by decedent in each corporation and have placed a value at his death on his stock holdings in each corporation with the exception of Majestic Life and Majestic Mortuary. With respect to decedent's stock in Majestic Mortuary and Majestic Life, we have set forth in our findings the stipulations of the parties. From these stipulations, it is apparent that respondent has no objection to and in fact has adopted the values placed on these stocks by the executrix in the amended list of assets filed under oath with the civil district court. However, in spite of the *590 stipulations with respect to the stocks owned by decedent in all eight corporations petitioner contends that the value of his stock in each corporation should be discounted by 25 percent because decedent's stock in each corporation constituted only a fractional interest. For the reasons set forth in our discussion of decedent's fractional interests in real properties, we are unable to conclude that the stipulations and the agreements reached by the parties with respect to the date of death values of decedent's corporate stocks can be disregarded in this case. In reaching this conclusion we have considered the only evidence in the record other than the aforesaid stipulated and agreed matters which pertain to the value of the stocks. This evidence was the testimony of Alvin Aubrey, the secretary of both Majestic Mortuary and Majestic Life, to the effect that at the time of decedent's death the common shares of these corporations had a value of $ 35 and $ 49 per share, respectively, because they were selling for these amounts. This testimony, however, has no probative value because it is contradicted in part by a letter dated December 30, 1986, from Mr. Aubrey to petitioner's counsel *591 in which Mr. Aubrey stated that the stocks of Majestic Mortuary and Majestic Life were selling for $ 35 and $ 100 per share, respectively, at decedent's death. Furthermore, on cross-examination Mr. Aubrey admitted that his values of $ 35 and $ 49 were not based on sales but on the par value of the shares because no sales of stock in either company had occurred for a period of 12 to 14 years prior to decedent's death. We conclude, therefore, that decedent's corporate stocks had values at his death as follows: Name of
Value of
corporation
stock
Majestic Mortuary
$ 67,876.80
Majestic Life
161,784.00
Haydel Realty
370,056.00
Haydel Manor
72,000.00
Manor Builders
39,180.00
Gentilly Land Co.
19,013.00
Admiral Isle
69,000.00
Boutte Corp.
30,000.00
(3) Addition to Tax under Section 6651(a)(1). The addition to tax under section 6651(a)(1) is properly imposed whenever a taxpayer fails to timely file a return or timely pay a tax unless such failure is due to reasonable cause and not to willful neglect. Petitioner has the burden of proving in this case that its failure to file a timely return and timely pay the estate tax was due to reasonable cause and not to willful *592 neglect. BJR Corp. v. Commissioner, 67 T.C. 111, 131 (1976); Rule 142(a). Since decedent died on September 19, 1981, the estate had until June 5, 1982, within which to file an estate tax return and pay any estate tax due. Sec. 6075(a). Pursuant to a timely application by petitioner, the due date of the return and tax was extended to December 15, 1982. The estate tax return, reflecting a gross estate of $ 1,182,227.33 and an estate tax liability of $ 198,621.74, was filed on November 27, 1984. At the trial in December of 1990, no part of the estate tax reflected on the return or the deficiency subsequently determined by respondent had been paid. The record does contain a copy of an application for a further extension to March 28, 1983, of the time within which to file the estate tax return. The copy indicates that its original was signed by the executrix and a representative of the estate on December 14, 1982. The record, however, does not reflect whether or not the application was filed with respondent or what action, if any, was taken by respondent with respect to the requested extension. At trial and on brief petitioner does not contend that the extension *593 was granted. The mere making of a request for an extension of time within which to file a tax return without more has no bearing on whether or not there was reasonable cause for not filing the return on time. See Morrison Industries, Inc. v. Commissioner, T.C. Memo 1962-155. Petitioner claims that the delay in filing the estate tax return and paying the estate tax in this case was due to the numerous problems which the executrix encountered in the administration of the estate. In view of the delays caused by these problems, petitioner contends that the failure by the executrix to file a timely return was due to reasonable cause and not to willful neglect. Among the problems cited by petitioner are the following: (1) The delay in the confirmation of Ms. Robert as executrix from decedent's death on September 19, 1981, to August 19, 1982; (2) the failure by Mrs. Haydel and Mr. Kierr to qualify as coexecutors, which resulted in Ms. Robert's having to serve alone as the representative of the estate; (3) the almost continuous harassment Ms. Robert received from her three half sisters; (4) the withdrawal of Mr. Kierr's law firm as well as a successor firm as lawyers *594 for the estate; (5) the lawsuits in which she and the estate were involved, including income tax cases for decedent and one of his corporations in this Court, the case involving the manner in which the assets of decedent were held (separate or community property) which was appealed to the State supreme court, and the innumerable cases which she had to prosecute or defend in the local courts with respect to the estate and its assets; (6) the lack of records left by decedent and the condition of the records which were available; (7) the delays caused by having to search public records to locate assets owned by decedent and the extent and value of his interest in such assets; and (8) fractional interests which he owned in numerous tracts of real property and corporations. A review of the record before us establishes beyond any doubt that the executrix had to deal with a great many problems. It is equally obvious, however, that many of the problems occurred as the result of her own action or inaction. It is also apparent that not all of the problems were as great, or affected the administration of the estate to the extent, she contends. For instance, the record fails to reflect the *595 specific cause or causes for the delay of Ms. Robert's confirmation. Therefore, we are unable to determine whether the delay is attributable in whole or part to her failure to act or to interference by others. The failure of Mr. Kierr and Mrs. Haydel to qualify as coexecutors is understandable under the circumstances but the adverse effect, if any, of their absence does not appear from the record. First, Mrs. Haydel's possible contribution to the administration cannot be determined because her qualifications, if any, either by previous experience in such matters or by familiarity with the estate's assets is not shown. Second, while Mr. Kierr, as decedent's attorney and coowner with him in several parcels of real estate and closely held corporations, was obviously well qualified to serve as coexecutor, both his testimony and the testimony of Ms. Robert clearly indicate that in spite of his failure to qualify as an executor he voluntarily assisted her in the administration of the estate either to protect his interest in jointly owned properties or because of his long friendship and association with her father. Therefore, we are not convinced that the failure of either Mr. Kierr *596 or Mrs. Haydel to qualify as coexecutor of the estate was a sufficient cause for Ms. Robert's failure to file a timely return. Furthermore, the record contains no evidence that she ever petitioned the civil district court for the appointment of a qualified coexecutor to assist her. The withdrawal of Mr. Kierr's law firm as the legal representative of the estate is also understandable under the circumstances set out in our findings. However, the dismissal of the second firm by the executrix allegedly because of a possible breach of confidentially by unnamed employees of the firm appears questionable and without more is not acceptable as a reasonable cause for the delay especially for more than a very short period. Furthermore, her testimony at trial that the second firm was dismissed because of a possible breach of confidentiality is in conflict with the reason given for the delay in an attachment to the estate tax return in which she stated that the second firm was dismissed for lack of action due to the complexity of the estate. The executrix also contends that her failures are attributable in part to the harassment caused by the various legal actions instituted by her half *597 sisters in the local courts. The various pleadings, motions, orders, and other stipulated documents associated with these proceedings indicate that the majority of these actions represented attempts by the half sisters to force the executrix to perform her duties including the timely filing of Federal and State tax returns. Consequently, we are unable to consider these actions as contributing in any substantial way to the failure of the executrix. Ms. Robert also submits that the delay in filing the estate tax return was attributable in part to the poor condition of decedent's records which caused her to have to employ abstractors and appraisers to search public records in order to determine the nature, extent, and value of his ownership of properties in several parishes. However, at trial she admitted that the abstractors were able to complete their searches in 1 month. Mr. Guice, the appraiser of all of the real properties, was not employed by the executrix until ordered to do so by the local court in about August of 1985 almost 4 years after decedent's death and almost a year after the estate tax return was filed. He estimated that his job was completed in less than 6 months. *598 Therefore, we are unable to find that the abstractors and appraisers contributed to or caused the delay in filing the estate tax return. Furthermore, as set forth in our findings all of the parcels of real estate and all of the stock in the closely held corporations which are in dispute were coowned by decedent with his brother, James V. Haydel, and/or Mr. Kierr. Mr. Kierr had maintained complete and accurate records of the properties in which he was a coowner. The record is silent with regard to what records, if any, were maintained by James V. Haydel, decedent's other coowner and costockholder. While the record clearly indicates that Mr. Kierr cooperated with the executrix in the administration of the estate, it is also silent as to whether or not James V. Haydel was cooperative. We are unable to conclude, therefore, that decedent's coowners in both real property and stocks contributed in any way to the delay. Petitioner also attempts to justify the delay in filing the estate tax return by pointing to the litigation in the State courts regarding the validity of the prenuptial agreement entered into by decedent and Mrs. Haydel. This litigation was not commenced until June *599 23, 1987, or more than 2 years after the estate tax return was filed. The record contains no evidence that the question of the agreement's validity arose before the return was filed. Consequently, we are unable to conclude that this controversy contributed to the delay. Finally, petitioner contends that the other litigation in which the estate was involved, including the proceedings before this Court, greatly hampered the administration of the estate and constitutes reasonable cause for the delay in filing the estate tax return. In support of this contention petitioner points to the stipulated copies of numerous pleadings which were filed in these suits. The record, however, contains no specific explanation of how and to what extent they delayed the filing of the estate tax return. From the record before us it appears that these were not prolonged or complicated lawsuits and did not serve to excuse the delay in filing the return. From all of the foregoing, and the record as a whole, we conclude that petitioner has failed to carry its burden of showing that the delay in filing the estate tax return was due to reasonable cause and not to willful neglect. Consequently, respondent's *600 determination of the addition to tax under section 6651(a)(1) is sustained. Due to concessions, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect as of the date of decedent's death unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent concedes that if the community property provisions of the law of Louisiana are not applicable, no part of the separate assets held in the name of decedent's surviving spouse is includable in decedent's estate and his estate is entitled to a marital deduction under sec. 2056.
Petitioner concedes that at the date of his death, the decedent had cash on hand in the amount of $ 6,122.67, scrap iron with the fair market value of $ 200,000, and miscellaneous household goods and personal effects with the fair market value of $ 5,000.↩